IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ANTHONY ROSSI,<br>    Plaintiff,<br><br>v.<br><br>STEVEN GROFT and U.S. XPRESS,<br>INC., a Nevada Corporation,<br>    Defendants. | Case No. 10 C 50240<br><br>Magistrate Judge Geraldine Soat Brown |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Anthony Rossi alleges that he has suffered a permanent disability as a result of a January 2010 automobile accident caused by a truck driven by defendant Steven Groft and owned by defendant U.S. Xpress, Inc. (Not. Rem., Ex. D, Compl.) [Dkt 1.] The court has jurisdiction under 28 U.S.C. § 1332, and the parties have consented to the jurisdiction of the magistrate judge under 28 U.S.C. § 636 [dkt 55]. A jury trial is scheduled to begin on July 8, 2013. Before the court are Plaintiff's Motion to Bar Defendant's Expert Szymon Sami Rosenblatt, M.D. (Pl.'s Mot. Bar) [dkt 64] and Defendants' Motion for Leave to Amend Expert Disclosures (Defs.' Mot. Am. Expert Disc.) [dkt 91]. For the following reasons, Rossi's motion is denied and defendants' motion is granted.

**BACKGROUND**

Defendants retained neurosurgeon Dr. Szymon Sami Rosenblatt to opine about the extent of Rossi's injuries. (Pl.'s Mot. Bar, Ex. 1, Rep. Dr. Rosenblatt.) His brief report refers to some of the records that he reviewed and states his conclusions from those records. (*Id.* at 2-3.) Dr. Rosenblatt

1

opines that Rossi has sustained a "traumatic cervical strain," and that "patients with this condition would be expected to significantly recover with appropriate physiatry therapy within 6 to 12 weeks." (*Id.* at 3.) Dr. Rosenblatt has not been deposed, and counsel for Rossi has indicated that Dr. Rosenblatt will not be deposed before trial.

Rossi contends that Dr. Rosenblatt's report is insufficient, and thus he should be barred from testifying. First, Rossi argues that Dr. Rosenblatt's report does not "explicitly state a recognized methodology to reach his opinions and conclusions" and "does not contain the basis and reasons for his opinions." (Pl.'s Mot. Bar ¶ 5.) Second, Rossi argues Dr. Rosenblatt should be barred because Dr. Rosenblatt "never lists which records he reviewed." (*Id.* ¶ 6.)

In response to Rossi's motion, defendants have moved for leave to amend Dr. Rosenblatt's disclosure to include a complete list of records that Dr. Rosenblatt reviewed. (Defs.' Mot. Am. Expert Disc.)[1] Rossi opposes the amendment, and maintains that he has been prejudiced by defendants' insufficient original submission. (Pl.'s Resp. Mot. Am. Expert Disc.) [Dkt 95.]

## DISCUSSION

Rossi's motion to bar implicates the requirements for expert reports under Fed. R. Civ. P. 26 and the gatekeeping role of the court for the admission of expert testimony under Fed. R. Evid. 702 and *Daubert v. Merell Dow Pharms.*, 509 U.S. 579 (1993).

A party seeking to have a retained expert testify must serve an expert report that complies with Fed. R. Civ. P. 26(a)(2)(B). The purpose of an expert report is to give "adequate notice of the

---

[1] Defendants' first motion to amend its expert disclosures [dkt 82] was denied without prejudice because it did not contain a proposed amendment. [*See* dkt 90.]

substance of the expert's forthcoming testimony and to give the opposing party time to prepare for a response." *Meyers v. Nat'l R.R. Passenger Corp.,* 619 F.3d 729, 734 (7th Cir. 2010). Among other things, an expert report must contain "a complete statement of all opinions the witness will express and the basis and reasons for them," and "the facts or data considered by the witness in forming them." Fed. R. Civ. P. 26(a)(2)(B)(I)-(ii).

"If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). The following factors guide a court's analysis: (1) the prejudice or surprise to the party against whom the evidence is offered; (2) the ability of the party to cure the prejudice; (3) the likelihood of disruption to the trial; and (4) the bad faith or willfulness involved in not disclosing the evidence at an earlier date. *David v. Caterpillar, Inc.*, 324 F.3d 851, 857 (7th Cir. 2003).

Federal Rule of Evidence 702, which governs the admission of expert witness testimony, provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

In *Daubert*, the Supreme Court emphasized the "gatekeeping" role of the federal trial judge in ensuring that expert testimony is both relevant and reliable. *Daubert*, 509 U.S. at 589 n.7, 597.

To make this determination, courts consider: (1) whether the witness is qualified as an expert by knowledge, skill, experience, training, or education; (2) whether the testimony has a reliable basis in the knowledge and experience of the relevant discipline; and (3) whether the testimony will "assist the trier of fact to understand the evidence or to determine a fact in issue." *See Myers v. Ill. C. R.R. Co.*, 629 F.3d 639, 644 (7th Cir. 2010) (quoting *Ervin v. Johnson & Johnson, Inc.*, 492 F.3d 901, 904 (7th Cir. 2007)). "The proponent of the expert bears the burden of demonstrating that the expert's testimony would satisfy the *Daubert* standard." *Lewis v. CITGO Petroleum Corp.*, 561 F.3d 698, 705 (7th Cir. 2009) (citing Fed. R. Evid. 702 advisory comm. nn. (2000 Amends.)).

Rossi argues that Dr. Rosenblatt's report must be struck because it fails to mention a methodology explicitly. Dr. Rosenblatt's report, however, makes his methodology clear: he reviewed Rossi's medical records and he came to a conclusion about the extent of Rossi's injuries based on his review of the records and his expertise as a surgeon. (Rosenblatt Rep. at 2-3.) To support his conclusion that Rossi has "a traumatic cervical strain," Dr. Rosenblatt states that Rossi's "CT of the cervical spine, three MRIs of the cervical spine and two EMGs" show "only mild degenerative changes and no evidence of a significant structural abnormality in the spine." (*Id.*) Further, according to Dr. Rosenblatt, Rossi's MRI of the thoracic spine revealed only "mild to very small" disc hernaiations, and MRI of the lumbar spine revealed only "a small broad-based central and slightly right-sided disc protrusion." (*Id*. at 2.) The report also indicates that EMGs of Rossi's extremities do not reveal an electrophysiological abnormality. (*Id*.) Lastly, Dr. Rosenblatt observes that the "severity of [Rossi's] symptoms and complaints . . . are not supported by any objective studies or findings" and that Rossi's doctors "all agree that there are no surgical indications." (*Id*. at 2-3.)

Dr. Rosenblatt's review of medical records in light of his medical expertise is an accepted methodology for the opinion Dr. Rosenblatt tenders in this case: the diagnosis of medical conditions. *See Gayton v. McCoy*, 593 F.3d 610, 618 (7th Cir. 2010) (reversing district court's exclusion of testimony of expert doctor and finding that doctor's review of records and "his medical experience" "provided a sufficient scientific basis for his position"). That is different from a doctor's opinion about the cause of an injury, which was the proposed doctors' testimony in *Meyers*, 619 F.3d 729, upon which Rossi relies. (Pl.'s Reply at 2-3.) [Dkt 89.] *See also Myers,* 629 F.3d at 644 (striking doctor's opinion as to causation and stating that "[t]he question here is not what Myers was suffering from but what caused his ailments").

Rossi also complains that Dr. Rosenblatt's report does not address Rossi's cervical injections or the opinions of Rossi's treating doctors. (Pl.'s Mot. Bar ¶ 5.) Those alleged omissions only go to the weight that a jury would assign to Dr. Rosenblatt's testimony, and not its admissibility. *See Ortiz v. City of Chicago*, 656 F.3d 523, 537 (7th Cir. 2011). Accordingly, Rossi's motion to strike Dr. Rosenblatt's opinion under *Daubert* standards fails.

Rossi also argues that Dr. Rosenblatt's failure to list all of the medical records he reviewed violates Fed. R. Civ. P. 26(a)(2)(B)(ii), which requires that an expert's disclosure contain "the facts or data considered by the witness in forming [his opinions]." (Pl.'s Mot. Bar ¶ 6.) "The disclosure obligation extends to any facts or data 'considered' by the expert in forming the opinions to be expressed, not only those relied upon by the expert." Fed. R. Civ. P. Rule 26(a)(2)(B) advisory comm. nn. (2010 Amends.) Dr. Rosenblatt's disclosure as originally served insufficiently states that he "has reviewed extensive medical records including radiological examinations" and refers to the specific medical records on which he bases his opinion, but does not comprehensively list all of the

5

records that he reviewed. (Rosenblatt Rep. at 2).

As noted above, a report that fails to comply with the requirements of Rule 26 must be stricken unless the failure was justified or harmless. Fed. R. Civ. P. 37(c)(1). However, "[t]otal exclusion of an expert's testimony is an extreme sanction for the failure to comply with Rule 26(a)(2)(B)(ii)." *Allstate Ins. Co. v. Electrolux Home Prods.*, 840 F. Supp. 2d 1072, 1081 (N.D. Ill. 2012); *see also Weistock v. Midwestern Regl. Med. Ctr.*, No. 07 C 1678, 2010 WL 1655449 at *4 (N.D. Ill. Apr. 23, 2010).

Defendants move to amend Dr. Rosenblatt's report to include a list of the pleadings, discovery materials and medical records that Dr. Rosenblatt reviewed. (Defs.' Mot. Am. Expert Disc., Ex. D at 7-8.) This is not a situation where defendants are seeking to change or supplement any of Dr. Rosenblatt's opinions; they are simply listing the materials he reviewed. Significantly, all of documents on the list are Rossi's medical records or pleadings and discovery materials in this case. There are no new materials to which Rossi's counsel has not had access.

At the hearing on defendants' motion, the court asked Rossi's counsel what prejudice Rossi would suffer if defendants were given leave to amend to add the list now, three months before trial, in light of the fact that Rossi's counsel has not deposed Dr. Rosenblatt and has disclaimed any intention of taking his deposition. In reply, Rossi argues that he has been prejudiced by the failure to list all of the records because Rossi's counsel would have asked Rossi's treating doctors different questions at their video evidence depositions. Specifically, Rossi would have asked his treating doctors:

> The trucking company hired a doctor to review your records; specifically Dr. Rosenblatt reviewed your record from <date>. Based on Dr. Rosenblatt's review of your record from that date (or dates), he feels that Anthony Rossi only sustained a cervical sprain that resolved within 6 to 12 weeks. Yet, doctor, you performed

6

Case: 3:10-cv-50240 Document #: 98 Filed: 04/09/13 Page 7 of 8 PageID #:1456

> several cervical epidural injections well after the 6 to 12 week period specified by Dr. Rosenblatt. Doctor, please explain for the judge and jury why your record of <date> does not support the opinion that Mr. Rossi was cured within 6 to 12 week[s], and why notwithstanding your record of <date> you continued to perform these procedures on Mr. Rossi well after the 6 to 12 week period specified by Dr. Rosenblatt. Doctor, why notwithstanding your record of <date> referenced by Dr. Rosenblatt, do you feel that Mr. Rossi will continue to require pain management for his cervical injury into the future?

(Pl.'s Resp. Mot. Am. Expert Disc. ¶ 12.) That line of inquiry, however, is not substantively different from asking: "Do you agree with Dr. Rosenblatt's assessment of Rossi's injury as that of a cervical strain that would resolve in six to 12 weeks?" or "Is your treatment of Rossi consistent with a cervical strain that would resolve in six to 12 weeks?" Rossi could have asked either of those questions based on Dr. Rosenblatt's report in its original form.

Any limitation Rossi's counsel might have encountered in cross-examining Dr. Rosenblatt at trial from not having a list of the documents Dr. Rosenblatt reviewed will be eliminated by the defendants' amended disclosure. The trial is currently scheduled to begin on July 8, 2013, thus giving Rossi more than enough time to prepare for Dr. Rosenblatt's cross-examination. In sum, defendants' failure to comply with Rule 26(a)(2)(B)(ii) was harmless. Accordingly, Dr. Rosenblatt will be allowed to testify at trial, and defendants will be permitted to amend Dr. Rosenblatt's disclosure.

## CONCLUSION

For the foregoing reasons, Plaintiff's Motion to Bar Defendant's Expert Szymon Sami Rosenblatt, M.D. [dkt 64] is denied, and Defendants' Motion for Leave to Amend Expert Disclosures [dkt 91] is granted. Defendants must serve the amended disclosure that is attached to

their motion by April 10, 2013.

_____
Geraldine Soat Brown
United States Magistrate Judge

**DATE: April 9, 2013**