**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| ANTHONY ROSSI,<br>    Plaintiff,<br><br>v.<br><br>STEVEN GROFT and U.S. XPRESS,<br>INC., a Nevada Corporation,<br>    Defendants. | )<br>)<br>)   Case No. 10 C 50240<br>)<br>)   Magistrate Judge Geraldine Soat Brown<br>)<br>)<br>)<br>) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Anthony Rossi alleges that he has suffered a permanent disability as a result of a January 2010 automobile accident caused by a truck driven by defendant Steven Groft and owned by defendant U.S. Xpress, Inc. (Not. Rem., Ex. D, Compl.) [Dkt 1.] The court has jurisdiction under 28 U.S.C. § 1332, and the parties have consented to the jurisdiction of the magistrate judge under 28 U.S.C. § 636 [dkt 55]. A jury trial is scheduled to begin on July 8, 2013. Before the court are Defendants' Rule 702 *Daubert* Motion to Strike David Gibson's Expert Report and Opinions and to Bar Him from Testifying at Trial [dkt 62], and Plaintiff's Renewed Motion to Bar Defendant[s'] Experts Rosemarie Nolan and John [K]och (Pl.'s Renewed Mot. Bar) [dkt 84].[1] For the following reasons, the defendants' motion is denied and plaintiff's motion is granted.

---

[1] In the parties' filings, the spelling of Mr. Koch's name has shifted between "Coch" and "Koch." In the defendants' most recent expert disclosure his name is spelled "Koch," so that spelling is used here.

1

**I.      Defendant's Motion to Strike David Gibson**

At the time of the accident, Rossi was 27 years old, and had completed two semesters of college. (*See* Defs.' Mem., Ex. C., Rep. David S. Gibson at 2-3.) [Dkt 63.] Prior to the accident, Rossi had worked primarily as a loan officer, but had never made more than $10,000 a year. (*Id.*, Ex. E, Dep. Anthony Rossi, Part I at 74-76.) At the time of his deposition in October 2011, Rossi stated that he had not applied for any jobs since the accident because the income he could earn with his limitations would be equivalent to paying child care, and he was looking to re-enter a physical rehabilitation program. (*Id.* at 77-79.) At the time of the accident, Rossi was in the process of applying for a position at the Cook County Sheriff's Office as a deputy sheriff. (*Id.* at 11-12 and Ex. 1, Pl.'s Interrog. Ans. ¶ 8.)[2]

Rossi has retained expert vocational economist David Gibson to opine as to Rossi's loss of earning capacity due to his injuries. Mr. Gibson is employed at Vocational Economics, Inc., and has a bachelor's degree in accounting and master's degrees in finance and rehabilitation counseling. (Defs.' Mem., Ex. B, Dep. David S. Gibson, Ex. B.) Mr. Gibson opines that Rossi has a loss in lifetime earning capacity "in a range of $957,344 to $1,101,934 stated in terms of present value." (Gibson Rep. at 1.)

To reach that conclusion, Mr. Gibson compares Rossi pre-injury earning capacity and worklife expectancy with his post-injury earning capacity and worklife expectancy using data from the U.S. Census Bureau's American Community Survey. (*Id.* at 4.) In his model, Mr. Gibson hypothesizes a "proxy" person for Rossi based on variables that correlate to earnings and work-life

---

[2] Defendants state that Rossi sought a job as a "correctional officer" rather than as a "deputy sheriff." (Defs.' Mem. at 9.) Any differences between the positions is irrelevant to the resolution of the motions.

expectancy, such as gender, education, disability status and age. (Gibson Dep. at 74, 78.) To determine Rossi's pre-injury earning capacity, Mr. Gibson assumes that Rossi's pre-injury earning capacity was "reasonably represented by the median age-earnings progression (AEP) that accrues to males of his education level without a disability." (Gibson Rep. at 4.) In other words, Mr. Gibson concludes that Rossi is reasonably represented by that median so that it becomes a reasonable proxy for him. (Gibson Dep. at 74.) Mr. Gibson likewise opines that Rossi's post-injury earning potential was reasonably represented by the median AEP for those with Rossi's education level with a non-severe physical disability. (Gibson Rep. at 4.) Mr. Gibson then adjusts the data to reflect that males with Rossi's education level in Chicago earn 12% above the national rate, and adds in fringe benefits at the national average rate of 25.5%. (*Id.*) After these adjustments, the average earning capacity per year over a worklife for those without a disability ranges from $48,388 for those with a high school degree to $59,894 for those with some college. (*Id.* at 5.) For those with a disability, the numbers respectively range from $42,964 to $51,497. (*Id.*) After taking into account that, with the disability, Rossi's worklife expectancy would be reduced in the range from 11.9 to 13.8 years, Mr. Gibson calculates Rossi's lost lifetime earning capacity to be in the range from $957,344 to $1,101,934. (*Id.* at 5.)

Defendants argue that Mr. Gibson should be barred from testifying because Mr. Gibson's opinion is not sufficiently reliable for admission under Fed. R. Evid. 702. (Defs.' Mem.)

Federal Rule of Evidence 702, which governs the admission of expert witness testimony, provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

3

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert has reliably applied the principles and methods to the facts of the case.

In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, the Supreme Court emphasized the "gatekeeping" role of the federal trial judge in ensuring that expert testimony is both relevant and reliable. *Daubert*, 509 U.S. 579, 589 n. 7, 597 (1993). To make this determination, courts consider: (1) whether the witness is qualified as an expert by knowledge, skill, experience, training, or education; (2) whether the testimony has a reliable basis in the knowledge and experience of the relevant discipline; and (3) whether the testimony will "assist the trier of fact to understand the evidence or to determine a fact in issue." *See Myers v. Ill. C. R.R. Co.*, 629 F.3d 639, 644 (7th Cir. 2010) (quoting *Ervin v. Johnson & Johnson, Inc.*, 492 F.3d 901, 904 (7th Cir. 2007)). "The proponent of the expert bears the burden of demonstrating that the expert's testimony would satisfy the *Daubert* standard." *Lewis v. CITGO Petroleum Corp.*, 561 F.3d 698, 705 (7th Cir. 2009) (citing Fed. R. Evid. 702 advisory comm. nn. (2000 Amends.)).

Defendants do not challenge Mr. Gibson's credentials. It is worth noting that both Mr. Gibson and his colleagues at Vocational Economics, Inc., have been permitted by courts in this district to testify as experts using worklife expectancy tables to determine diminished earning capacity. *See Goesel v. Boley Intl. (H.K.) Ltd.,* No. 09 C 4595, 2012 WL 5306284 at *1-2 (N.D. Ill. Oct. 26, 2012); *Thakore v. Universal Mach. Co. of Pottstown, Inc.*, 670 F. Supp. 2d 705, 729-31 (N.D. Ill. 2009). Instead, defendants argue that Mr. Gibson's use of the average age earning

progression of the median male with Rossi's education level "utilizes certain generalities clearly contradictory to the facts proffered in this case." (Defs.' Mem. at 4.) Specifically, defendants complain that Mr. Gibson has failed to consider Rossi's earnings history, Rossi's slim prospects of employment with the Cook County Sheriff's Office, and Rossi's home life. (*Id.*)

If an expert's testimony is based on unwarranted or implausible assumptions, it should be excluded. *See, e.g., Target Mkt. Publg., Inc. v. ADVO, Inc.*, 136 F.3d 1139, 1143-44 (7th Cir. 1998). "The Court must be mindful, however, not to usurp the jury's role of determining the 'soundness of the factual underpinnings of the expert's analysis and the correctness of the expert's conclusions based on that analysis.'" *Sys. Dev. Integration, LLC v. Computer Sci. Corp.*, 886 F. Supp. 2d 873, 882 (N.D. Ill. 2012) (quoting *Bielskis v. Louisville Ladder, Inc.*, 663 F.3d 887, 896 (7th Cir. 2011)). Here, Mr. Gibson's assumptions are not so implausible as to render his testimony inadmissible.

First, defendants urge that Mr. Gibson errs in using the "median person" to assess Rossi's earning capacity because Rossi's income before the accident was substantially below what Mr. Gibson's charts show would be expected of the median person. (Defs.' Mem. at 4-7.) Illinois law, however, provides that the measure of lost future earnings "is calculated by deducting the amount plaintiff is capable of earning after his injury from the amount he was capable of earning prior to his injury, and awarding plaintiff the difference." *LaFever v. Kemlite Co.*, 706 N.E.2d 441, 455 (Ill. 1998) (internal citations omitted). "Damages should be estimated on the injured person's ability to earn money, rather than what he actually earned before the injury, and the difference in the actual earnings of plaintiff before and after the injury does not constitute the measure." *Robinson v. Greeley & Hansen*, 449 N.E.2d 250, 255 (Ill App. 2d Dist. 1983). "What a plaintiff is paid before and after an injury is some evidence of diminished earning capacity but is not conclusive." Bruce

5

L. Ottley, Rogelio A. Lasso & Michael J. Polelle, *Illinois Tort Law*, § 24.10, 24-21 (4th ed., LexisNexis 2011).

 Mr. Gibson has reasons why he believes the median person he hypothesizes is a reasonable proxy for Rossi. His report explains that "younger workers rarely have earnings that reasonably represent an average lifetime earning capacity." (Pl.'s Resp., Ex. B at 15.) In his deposition, Mr. Gibson testified that after taking into account Rossi's "earning history, [Rossi's] realization that his work history as a loan officer was coming to an end and his attempts to find further employment in the future," Mr. Gibson "felt that employment and earnings that [Rossi] would expect would be reasonably represented by the typical earnings of somebody of his education level." (Gibson Dep. at 68-69.) Mr. Gibson also stated that he used Rossi's pursuit of employment at the Cook County Sheriff's Office "as an indication of his motivation" which showed that Rossi was "actively pursuing employment that would be similar in nature to what I've depicted in my analyses." (*Id.* at 79-80.) Given that Rossi was only 27 years old and was looking for better paying employment at the time of the injury, there is a sufficient factual foundation for Mr. Gibson's opinion that Rossi's earning capacity is reasonably represented by the median male with Rossi's education notwithstanding Rossi's limited earnings history.[3]

---

[3] Defendants' opening brief contains only one citation to a case that dealt with lost future earnings and that case was only cited for the proposition that Illinois law does not require expert testimony to establish lost future earnings. (Defs.' Mem. at 6.) In their reply brief, however, defendants cite two cases in which the Third Circuit ruled that the district court had abused its discretion in admitting lost future earnings testimony that was based in part on unfounded assumptions about the plaintiff's pre-injury earning capacity. (Defs.' Reply at 7-8 (citing *Elock v. K-Mart Corp.*, 233 F.3d 734, 755 (3d Cir. 2000); *Gumbs v. Intl. Harvester, Inc.*, 718 F.2d 88, 98 (3d Cir. 1983)).) In both of those cases, however, the plaintiffs were over 50 years old and toward the end of their working life, thus undermining any assumptions about their pre-injury income earning capacities that significantly differed from their prior earnings history. *See Elock*, 233 F.3d at 740, 755 (finding expert's opinion to be unfounded where plaintiff was 51 years old and expert assumed a pre-injury earning capacity that was more than twice her reported pre-injury earnings); *Gumbs*, 718

Defendants also attack Mr. Gibson's consideration of Rossi's application to the sheriff's office, and have provided an affidavit from the Deputy Director of the Cook County Sheriff's Office Merit Board John Koch and deposition testimony of Deputy Sheriff Richard Bolec. (Def.'s Mem., Ex. H, I.) These, according to defendants, show that Rossi may not have been hired by the sheriff's office because of Rossi's prior arrests and history of drug use. (Defs.' Mem. at 10.) Mr. Gibson, however, testified that he does not premise his analysis on whether Rossi would have been hired by the sheriff's office: "Whether or not he actually obtained that particular position, I'm not basing my analysis on. But using that as an indication of his motivation, I felt it did exist and was sufficient to use the earnings that I did." (Gibson Dep. at 79.) Whether Rossi would have actually obtained employment in the Cook County Sheriff's Office is irrelevant to Mr. Gibson's analysis. Rather, the application supports Mr. Gibson's belief that Rossi would have been either actively employed or actively seeking employment similar in nature. (*Id.* at 80.)

Defendants argue that under Mr. Gibson's analysis "any profession a plaintiff aspired to become, regardless of his or her skills or qualifications for that particular profession, could be used as a legitimate basis for calculating loss of earning capacity." (Defs.' Mem. at 8.) That is not an accurate characterization of Mr. Gibson's opinion, which was more subtle. Mr. Gibson used the fact that Rossi applied for the job – not an assumption that he would get the job – to support his use of the median person as a proxy for Rossi. Defendants concede that Rossi had already passed the written examination by the time of the accident. (*Id.* at 9.) Thus, it is not unreasonable for Mr. Gibson to use Rossi's application to the sheriff's office as an indication that Rossi's pre-injury employment aspirations were in line with those expected of the median male with Rossi's education.

---

F.2d at 98 (finding expert's opinion to be unfounded when plaintiff was 57 years old, and expert assumed that pre-injury earning capacity to be more than twice plaintiff's average annual income).

Lastly, defendants complain that Mr. Gibson does not take into account that after his injury, Rossi currently stays at home with his daughter instead of working. In his deposition, Rossi stated that he was not currently looking for a job because the jobs he could get with his disability would not cover the cost of day care, and that at the time of his deposition, he was looking to undergo physical therapy. (Rossi Dep. at 77-79.) It is hard to see how this fact undermines Mr. Gibson's analysis, and defendants' brief does not clarify the matter. Mr. Gibson assumes that Rossi is able to work (Gibson Dep. at 62-63), and his calculation of the loss of lifetime expected earnings includes an offset based on the assumption that Rossi will obtain work consistent with a non-severe physical disability (Gibson Rep. at 5.)

Mr. Gibson's opinions, including his opinion that Rossi is reasonably represented by the median proxy person, are based on sufficient facts and data to be admissible, provided, of course, that Rossi presents evidence that his earning capacity has been impaired by the injury. This is not to say, however, that defendants cannot attack Mr. Gibson's opinions or that the jury has to accept them. This is only a ruling that they are sufficient to survive a challenge under the *Daubert* standard. At trial, defendants can cross-examine Mr. Gibson about any purported oversights and any inconsistencies between Mr. Gibson's assumptions and the evidence in the record.

Accordingly, defendants' motion to strike Mr. Gibson's report and bar his testimony is denied.

**II.  Rossi's Renewed Motion to Bar John Koch and Rosemarie Nolan**

Defendants' have disclosed the aforementioned Mr. Koch along with Director of the Cook County Sheriff's Personnel Department Rosemarie Nolan as Fed R. Civ. P. 26(a)(2)(C) expert witnesses. (Defs.' Resp., Ex. C, Defs.' Am. R. 26(a) Disclosures at 4, 9-11.) [Dkt 93]. In

defendants' original Rule 26 disclosure, defendants stated that Mr. Koch and Ms. Nolan were expected to testify as to the hiring procedures and selection criteria for the Cook County Sheriff's Department, and "expected to opine as to whether Anthony Rossi would have obtained a job as a Correctional Officer based on all relevant facts." (Pl.'s Mot. Bar, Ex. 1, Defs.' R. 26(a) Disclosures at 4, 5.) [Dkt 65].

Defendants filed their motion to bar Mr. Gibson on January 31, 2013. On February 8, Rossi filed a motion to bar Mr. Koch and Ms. Nolan on the grounds that Mr. Koch and Ms. Nolan should be considered retained Rule 26(a)(2)(B) witnesses rather than Rule 26(a)(2)(C) witnesses. (Pl.'s Mot. Bar.) Rule 26(a)(2)(B) provides that "[u]nless otherwise stipulated or ordered by the court, this disclosure must be accompanied by a written report – prepared and signed by the witness – if the witness is one retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony." Rule 26(a)(2)(C), on the other hand, requires only an identification of the subject matter on which the witness is expected to present evidence and a summary of the facts and opinions to be offered by the witness. Rossi argued that because there was no court order or stipulation exempting Mr. Koch and Ms. Nolan from the report requirement of Rule 26(a)(2)(B), they must barred because they had not prepared the required report. (Pl.'s Mot. Bar ¶ 1.) Alternatively, Rossi argued that the disclosure was insufficient because defendants failed to disclose Mr. Koch's and Ms. Nolan's opinion as to whether Rossi would have obtained a job at the sheriff's office. (*Id.* ¶¶ 3,4.)

At the motion hearing, defendants' stated that neither Mr. Koch nor Ms. Nolan were retained nor specially employed to give testimony. [*See* dkt 78.] Defendants also stated that the opinions were relevant because Rossi's expert Mr. Gibson had premised his analysis on the assumption that Rossi would have received a job at the sheriff's office but for his injuries suffered in the accident.

9

(*See id*.) Rossi's counsel disputed that characterization, and stated that he does not intend to argue that Rossi would have obtained a job in the sheriff's office but for his injuries. (*See id.*) Finding that the witnesses were neither retained nor specially employed by the defendants, the court rejected Rossi's argument about Rule 26(a)(2)(B), but granted Rossi's motion because the disclosure was insufficient in any event. (*See id.*) Defendants were given leave to file an amended disclosure conforming with Rule 26(a)(2)(C) that disclosed Mr. Koch's and Ms. Nolan's proposed opinions and the facts upon which they base those opinions. (*Id.*)

Defendants' amended disclosure states that Mr. Koch and Ms. Nolan will "opine that it is purely speculative as to whether Anthony Rossi would have been hired as a Cook County Correctional or Sheriff's Officer as of the date of the accident." (Defs.' Am. R. 26(a) Disclosures at 4, 9-11.)

On March 8, Rossi renewed his motion arguing that Mr. Koch and Ms. Nolan should be deemed to be Rule 26(a)(2)(B) witnesses under the rule established by *Meyers v. Natl. R.R. Passenger Corp.*, 619 F.3d 729 (7th Cir. 2010). (Pl.'s Renewed Mot. Bar ¶ 14.) In *Meyers*, the Seventh Circuit held that "a treating physician who is offered to provide expert testimony as to the cause of the plaintiff's injury, but who did not make that determination in the course of providing treatment, should be deemed to be one 'retained or specially employed to provide expert testimony in the case.'" *Meyers*, 619 F.3d at 734-35. Rossi argues that Mr. Koch and Ms. Nolan are analogous to the treating physician at issue in *Meyers* and thus should be deemed to be Rule 26(a)(2)(B) witnesses. (Pl.'s Renewed Mot. Bar ¶ 5.) While Rossi's argument is novel, it does not need to be addressed here.

By the time Rossi filed his renewed motion, the court had reviewed defendants' motion to bar Mr. Gibson and had become concerned about the relevance of Mr. Koch's and Ms. Nolan's

proposed testimony. Defendants were ordered to address in their response to Rossi's motion whether the proposed testimony of Mr. Koch and Ms. Nolan would have any relevance to this case apart from responding to Mr. Gibson's opinion. [Dkt 90.]

In their response, defendants argue that if Rossi "intends to testify that he was unable to complete the application process for a position as a correctional officer . . . because of his injuries," defendants "are entitled to rebut [that testimony] with testimony from Nolan and Koch regarding the 2010 Hiring Cycle, the multitude of steps that applicants need to pass before being qualified for hire and the criteria taken into account by [the sheriff's office] in the hiring process for a correctional officer." (Defs.' Resp. ¶¶ 14, 16.)

As discussed above, Mr. Gibson does not base his opinion on whether Rossi would have obtained employment with the sheriff's office. Rossi's counsel has likewise indicated that he does not intend to make such an argument at trial. Thus, Mr. Koch's and Ms. Nolan's testimony about the hiring process at the sheriff's office and their opinions about Rossi's chances of employment are irrelevant to this case, and will not assist the trier of fact to "understand the evidence or determine a fact in issue." Fed. R. Evid. 702. Also, any relevance their testimony may have is substantially outweighed by its potential to confuse the issues or mislead the jury and thus is inadmissible under Fed. R. Evid. 403. Accordingly, Rossi's renewed motion to bar Mr. Koch and Ms. Nolan from testifying is granted.

Defendants worry that, if Rossi or Mr. Gibson testify that Rossi was applying for a job with the sheriff's office at the time of the injury, the jury will improperly speculate about whether he would have received the position but for his injury, and award him damages based on the assumption that he would have. This worry can be alleviated by a limiting instruction, and the court will entertain a request by the defendants for a limiting instruction to given to the jury at the relevant

times, for example, during Rossi's or Mr. Gibson's testimony or with the final instructions.[4]

## CONCLUSION

For the aforementioned reasons, defendants' motion [dkt 62] is denied and plaintiff's motion [dkt 84] is granted as stated above.

_____
Geraldine Soat Brown
United States Magistrate Judge

**DATE:** April 16, 2013

---

[4] The court has in mind an instruction along the following lines: "You are to understand that the witness is not expressing an opinion about whether Mr. Rossi would have gotten a job with the Cook County Sheriff's Office. You are instructed not to speculate whether Mr. Rossi would have gotten a job with the Cook County Sheriff's Office or to base any part of your verdict on an assumption that he would have gotten such a job." If the defendants would like to propose such an instruction, they must include it with the proposed jury instructions filed with the draft pretrial order.