# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| ANTHONY ROSSI,<br>  Plaintiff,<br><br>v.<br><br>STEVEN GROFT and U.S. XPRESS,<br>INC., a Nevada Corporation,<br>  Defendants. | Case No. 10 C 50240<br><br>Magistrate Judge Geraldine Soat Brown |

## MEMORANDUM OPINION AND ORDER

Plaintiff Anthony Rossi alleges that he has suffered a permanent disability as a result of a January 2010 automobile accident caused by a truck driven by defendant Steven Groft and owned by defendant U.S. Xpress, Inc. (Not. Rem., Ex. D, Compl.) [Dkt 1.] The court has jurisdiction under 28 U.S.C. § 1332, and the parties have consented to the jurisdiction of the magistrate judge under 28 U.S.C. § 636 [dkt 55]. A jury trial is scheduled to begin on July 8, 2013, and the deadline for the parties' draft pretrial order is June 17, 2013. [Dkt 59.] Before the court are defendants' motion in limine no. 2 (Defs.' MIL No. 2) [dkt 104] and defendants' Rule 37(c)(1) Motion to Strike Dr. Dennis J. Gates' Expert Report and Opinions and to Bar Him From Testifying at Trial (Defs.' Mot. Strike) [dkt 122]. For the reasons stated below, the motion in limine is granted and the motion to strike Dr. Gates' report and bar his testimony is denied.

## Background

Defendants' motions argue that Rossi has untimely disclosed proof of nerve ablation treatment for his back pain and has untimely disclosed an updated expert report from his retained

1

medical expert Dr. Gates. The timeline of events leading to these motions, which is central to the their resolution, is set forth below.

1. May 24, 2011: The District Judge orders all discovery to be completed by March 21, 2012, and refers supervision of discovery to this court. [Dkt 15, 16.]

2. November 4, 2011: Rossi discloses retained medical expert Dr. Dennis Gates and his written report dated June 3, 2011. (Defs.' Mot. Strike, Ex. C.)

3. March 13, 2012: On defendants' motion, discovery deadline is reset by the District Judge to November 13, 2012. [Dkt 43.]

4. March 30, 2012: Rossi's Fed. R. Civ. P. 26(a)(2)(B) disclosure deadline set for April 9, 2012. [Dkt 44.]

5. April 3, 2012: Rossi serves an updated report from Dr. Gates, dated January 23, 2012. (Defs.' Mot. Strike, Ex. D.) Dr. Gates believes that Rossi has chronic pain in his cervical and lumbar spine as well as thoracic spine pain due to the accident. (*Id*. at 1-2.) Dr. Gates opines that Rossi's chronic pain in his cervical spine may be secondary to facet joint syndrome. (*Id.* at 1.) Dr. Gates' prognosis for Rossi is "stable." (*Id.* at 2.)[1]

6. July 18, 2012: Rossi sees Dr. Ebby Paul Jido to treat his neck pain. (Defs.' Mot. Strike, Ex. I at 1.) Dr. Jido recommends that Rossi undergo cervical facet joint injections and notes that Rossi may need radiofrequency ablation[2] if the effects from the cervical facet injections

---

[1] Defendants mistakenly assert that the January 2012 report states that Rossi's prognosis is "guarded." (Defs.' Mot. Strike ¶ 21.) It is Dr. Gates' June 2011 report that characterizes Rossi's prognosis as "guarded." (*Id.*, Ex. C.)

[2] Radiofrequency ablation is "the destruction of precisely controlled areas of tissue by heat induced by low-frequency electromagnetic waves." *Dorland's Illustrated Medical Dictionary* 4 (32nd ed., Elsevier Saunders 2012).

are short-lived. (*Id.*)

7. August 9, 2012: Dr. Gates is deposed. (*Id.* ¶ 5 & Ex. F.)

8. August 29, 2012: This court orders Defendants' Rule 26(a)(2)(B) disclosures to be served by September 28, 2012, and further notes that per the District Judge's order, all discovery shall be completed by November 13, 2012. [Dkt 50.]

9. September 4, 2012: Dr. Jido performs facet joint injections on Rossi. (Defs.' Mot. Strike, Ex. I at 7.)

10. September 24, 2012: Rossi's counsel informs defendants' counsel through a letter that "Rossi will be getting more facet injections on October 12, 2012 with Dr. Jido and this time the doctor will burn the nerve ending off." (*Id.*, Ex. G.)

11. October 11, 2012: Defendants ask the District Judge to extend the discovery deadline. (Defs.' Mot. Extend Time) [Dkt 51.] In their motion, defendants state that they need more time to prepare their expert reports in light of Rossi's continued treatment with Dr. Jido and that the parties "require additional time to engage in further fact discovery because of the nature of [Rossi's] claims for damages and treatment." (*Id.* ¶ 5, 10.)

12. October 12, 2012: Rossi undergoes ablation treatment with Dr. Jido, as described in a treatment record dictated by Dr. Jido the same day. (Defs.' Mot Strike, Ex. J.)

13. October 16, 2012: Defendants' motion to extend discovery deadline is referred to this court, and the parties consent to the jurisdiction of the magistrate judge. [Dkt 54, 55.] Defendants' motion is granted and defendants' expert disclosure deadline is reset to January 30, 2013. [Dkt 54.] The deadline for expert video depositions is set for February 22, 2013, although this deadline is later reset to April 22, 2013. [Dkt 54, 90.]

3

14. October 18, 2012: Defendants subpoena Rossi's records from Dr. Jido. The records received from Dr. Jido do not include a treatment record from October 12. (Pl.'s Resp. Defs.' Mot. Strike ¶ 5 & Ex. 1, 2.) [Dkt 130.]

15. October 22, 2012: Rossi also orders records from Dr. Jido. (*Id*. ¶ 5 & Ex. 3.) The records received do not include a treatment record from October 12. Copies of the records are given to defendants. (*Id.*)

16. November 1, 2012: Trial date is set for July 8, 2013. [Dkt 59.]

17. Late January/ early February 2013: Defendants disclose their retained medical expert Dr. Szymon Sami Rosenblatt. In his report dated September 28, 2012, Dr. Rosenblatt opines that Rossi does not have facet joint syndrome, but a traumatic cervical strain for which the expected recovery time would be 6 to 12 weeks. (Pl.'s Mot. Bar Dr. Rosenblatt, Ex. 1) [Dkt 64.] Dr. Rosenblatt further states Rossi's subjective complaints of pain "are not corroborated by any structural, electrophysical, or clinical findings." (*Id*.) The list of documents reviewed by Dr. Rosenblatt in forming his opinion does not mention any records from Dr. Jido. (Defs.' Mot. Amend., Ex. D.) [Dkt 91.]

18. February 12, 2013: Pursuant to their subpoena requests, defendants receive billing records from Dr. Jido's office. (Defs.' Reply Mot. Strike ¶ 6.) [Dkt 132.] The billing record for October 12 indicates that Rossi underwent "facet joint injection." (*Id.*, Ex. Q.)

19. February 26, 2013: At Rossi's request, Dr. Jido is deposed in a video deposition. Rossi's counsel asks Dr. Jido about the July 18, 2012 treatment record in which Dr. Jido notes that he recommends left cervical facet injection with steroids, and if Rossi does not respond to that, Dr. Jido would consider him for radiofrequency ablation. (Defs.' Mot.

Strike, Ex. H, Dep. Dr. Jido at 20-21.) Rossi's counsel asks Dr. Jido to explain what he meant radiofrequency ablation as referenced in the record. (*Id.* at 21.) Dr. Jido explains:

> "When we inject the facet joints, sometimes the steroid medication does not help. . . . [A]ll you benefit from is the local anesthetic that is injected. Once the local anesthetic wears off the steroid doesn't do any good. In a situation where the patient benefits from the local anesthetic but not the steroid medication, then what we do is – the ablation of the nerve that actually supplies the facet . . . . So what we do is we put the needle at an anatomical position right next to the bone, and then we make an increase in temperature, and we increase the temperature to the extent that the nerve is stunned, and therefore, the facet then becomes denervated, and so therefore, it cannot send a pain signal through the nerve into the brain. So the pain reduces tremendously."

(*Id.* at 21-22.) Rossi's counsel asks about a September 4, 2012 facet injection procedure (*id.* at 23-26), and refers to Dr. Jido's having "one more visit with Mr. Rossi then on December 18th of 2012." (*Id.* at 26.) Rossi's counsel never inquires about the October 12 ablation procedure. Defendants' counsel objects to any discussion of the December 18 appointment because Rossi had not produced records for the December 18 appointment. (*Id.* at 26-27.) Rossi's counsel chooses not to ask Dr. Jido about the December 18 appointment. (*Id.* at 27.) The records included as exhibits with Dr. Jido's deposition conclude with the September 4 appointment. (Defs.' Mot. Strike, Ex. I.)

20. March 21, 2013: After requesting it from Dr. Jido's office, Rossi's counsel receives the October 12 record. (Pl.'s Resp. Mot. Strike ¶ 7 & Ex. 5.)

21. March 28, 2013: Rossi discloses October 12 record to defendants. (*Id.*, Ex. 6.)

22. April 10, 2013: As required by the court's standing order, the parties meet and confer to discuss proposed motions in limine, which are due April 12. An updated report from Dr. Gates is not discussed at the meeting. (Defs.' Mot. Strike ¶ 9.)

5

23. April 11, 2013: Rossi discloses an updated report from Dr. Gates, dated March 25, 2013. (*Id.* ¶ 10.) Dr. Gates's March report states that he has reviewed Rossi's 2012 and early 2013 medical records and that his impression of Rossi's condition remains the same as it was in his January 2012 report. (*Id.*, Ex. M.) In contrast to his previous report which states that Rossi's prognosis is stable, the March 2013 report states, that Rossi's prognosis is good as to his thoracic and lumbar spine, but "regarding the cervical spine, it doesn't look very good, his symptoms seem to be worsening." (*Id.*) Dr. Gates' attached notes state that Rossi told Dr. Gates that "the radiofrequency ablations did not help at all." (*Id.,* Ex. N. at 8.)

In their present motions, defendants move to bar "any and all testimony regarding any nerve ablations" (Defs.' MIL No. 2 ¶ 1), to strike Dr. Gates' March 2013 report, and bar Dr. Gates from testifying at trial. (Defs.' Mot. Strike ¶ 23.) Defendants argue that if such evidence is allowed, the defendants be "permitted time to consult, and, if proper, retain the appropriate . . . expert." (Defs.' MIL no. 2 ¶ 16.)

**Legal Standard**

Under Rule 26(a)(1), a party is required to initially disclose "a copy – or a description by category and location – of all documents . . .that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses. Fed. R. Civ. P. 26(a)(1)(A)(ii). A Rule 26(a)(2)(B) retained expert witness like Dr. Gates is required to provide a report that contains, among other things, "a complete statement of all opinions the witness will express and the basis and reasons for them." Fed. R. Civ. P. 26(a)(2)(B)(I).

6

For disclosures made under Rule 26(a), a party has the duty to "supplement or correct its disclosure . . . in a timely manner if the party learns that in some material respect the disclosure . . . is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Fed. R. Civ. P. 26(e)(1). For expert witnesses, supplementation must be done by the time pretrial disclosures are due. Fed. R. Civ. P. 26(e)(2). Pretrial disclosures must be served at least 30 days before trial, or as ordered by the court. Fed. R. Civ. P. 26(a)(3)(B). If a party fails to disclose supplemental information required by Rule 26(e), the party is not allowed to use that information at trial unless the failure to disclose was substantially justified or harmless. Fed. R. Civ. P. 37(c)(1). The following factors guide a court's analysis: (1) the prejudice or surprise to the party against whom the evidence is offered; (2) the ability of the party to cure the prejudice; (3) the likelihood of disruption to the trial; and (4) the bad faith or willfulness involved in not disclosing the evidence at an earlier date. *David v. Caterpillar, Inc.*, 324 F.3d 851, 857 (7th Cir. 2003).

**Discussion**

Nerve ablation was first mentioned as a possible option for Rossi in Dr. Jido's July 18, 2012 treatment record. (Defs.' Mot. Strike, Ex. I.) In September, Rossi's counsel informed defendants' counsel that, along more facet injections, Dr. Jido would "burn the nerve ending off" on October 12. (*Id.*, Ex. G.) The information that Rossi had, in fact, undergone nerve ablation, was not, however, provided to defendants until March 28, 2013, after the deposition of Dr. Jido and after defendants' expert disclosure. Although Dr. Jido's record productions to both Rossi's counsel and defendants' counsel were alike in omitting the October 12 treatment record describing the procedure,

7

Rossi himself knew what medical procedures he had endured. The fact that Rossi's counsel inquired about nerve ablations at Dr. Jido's deposition suggests that he, too, knew that Rossi had undergone the procedure.

If defendants had wondered if Rossi had undergone the procedure, a number of things might have thrown them off the scent. First, the medical bill for the October 12 treatment does not expressly mention nerve ablation. More significant, however, is what happened at Dr. Jido's deposition in February 2013. Although Rossi's counsel asked Dr. Jido about nerve ablation in general, Rossi's counsel did not ask Dr. Jido whether he had administered nerve ablation to Rossi. On the contrary, his questioning omitted any reference to a treatment on October 12. He questioned Dr. Jido about a September 4, 2012 facet injection procedure, and then referred to Dr. Jido having "one more visit with Mr. Rossi then on December 18, 2012" (Jido Dep. at 26), giving the impression that the proposed treatment on October 12 either did not take place or was too insignificant to mention. By the time Rossi disclosed Dr. Jido's record of the procedure on March 28 (a week after Rossi's counsel received it), the time for retaining and disclosing experts had passed.

Thus, defendants have not had an opportunity to question Dr. Jido about his administration of nerve ablations to Rossi, so the late disclosure of the fact that Rossi had actually undergone nerve ablation was neither justified nor harmless. Reopening expert disclosures and testimony at this late date would jeopardize the trial schedule. In light of the fact that Rossi's counsel declined to ask Dr. Jido during his video deposition the direct question, "Did you administer nerve ablation to Mr. Rossi?" it appears that the evidence of nerve ablation could not be particularly significant in Rossi's proof of his treatment and damages. That fact is reinforced by the fact that the October 12 procedure was billed as a "facet nerve injection" and the nerve ablation procedure was not separately identified.

Thus, considering the standards described above, defendants' motion in limine is granted. Rossi will not be permitted to present any evidence of, refer to, or argue the fact that he underwent nerve ablation.

The motion to strike Dr. Gates' report and to bar him as a witness is a different matter. Dr Gates' March report reflects the fact that Rossi continues to have medical treatment. This is not the situation where a party attempts to amend an expert report under the guise of supplementation. Dr. Gates' March 25 report appears to be a true supplement based on his evaluation of Rossi's continuing treatment. His modified prognosis opinion is based on Rossi's medical treatment that occurred after Dr. Gates' previous report in January 2012, and Dr. Gates' prognosis opinion does not "threaten to belatedly send the case on a wholly different tack." *Talbert v. City of Chicago*, 236 F.R.D. 415, 424 (N.D. Ill. 2006). Most of Dr. Gates' opinion, including his diagnosis of Rossi's conditions, remains unchanged from his prior reports. Even his one sentence reference to the nerve ablation procedure is simply an observation that it had not helped Rossi. His supplemental report is not untimely as it was disclosed prior to any deadline mandated by deadline Rule 26(e)(2) and Rule 26(a)(3).

Defendants have not shown that Dr. Gates' March report presents a reason to allow them to retain and disclose an additional expert. Defendants' current retained expert Dr. Rosenblatt did not review *any* records from Dr. Jido, at least as far as his disclosure indicates. Dr. Rosenblatt has a completely different view of Rossi's medical situation from Dr. Gates' and Dr. Jido's view. Dr. Rosenblatt is of the opinion that Rossi does not have facet joint syndrome in the cervical spine and that Rossi had a cervical strain that normally has a 6 to 12 week recovery period. Given that defendants' expert does not believe that Rossi has cervical facet joint syndrome and does not express

any opinion as to Dr. Jido's facet joint injections, it is hard to see why defendants would need another expert to opine on any additional treatment for Rossi's cervical facet joint issues.

Defendants also argue that they have not had a chance to cross-examine Dr. Gates regarding his supplemental opinion. Because Dr. Gates' March Report was disclosed after his deposition, if Rossi wants to introduce any of Dr. Gates's updated opinions, Dr. Gates will have to testify to those opinions at trial where defendants will have an opportunity to cross-examine Dr. Gates, and defendants' witness Dr. Rosenblatt will be able to respond. In light of the ruling above, however, Dr. Gates will not be permitted to mention Rossi's nerve ablation procedure.

## Conclusion

For the foregoing reasons, defendants' motion in limine no. 2 [dkt 104] is granted, and defendants' motion to strike Dr. Gates' report and bar him from testifying at trial [dkt 122] is denied.

_____
**Geraldine Soat Brown**
**United States Magistrate Judge**

**DATE: June 4, 2013**